















BJR   8/29/00   10:31

3:00-CV-01725   GEVISSER V. PEERLESS SYS CORP

*1*

*CMP.*

Jeffrey R. Krinsk, Esq. (109234)
Arthur L. Shingler, III, Esq. (181719)
FINKELSTEIN & KRINSK
501 West Broadway, Suite 1250
San Diego, CA 92101-3593
Telephone: 619/238-1333

Attorneys for Plaintiff

FILED

00 AUG 28 PH 2: 58

BY: B. Reed

DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

00CV 1725 L(RBB)

GARY S. GEVISSER, Individually and on
Behalf of Himself and All Others Similarly
Situated,

    Plaintiff,

v.

PEERLESS SYSTEMS CORP., EDWARD A.
GAVALDON, AND THOMAS B.
RUFFOLO,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

CLASS ACTION

COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

   Plaintiff, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through his attorneys, which included, among other things, a review of the public documents and announcements, Securities and Exchange Commission ("SEC") filings, and press releases regarding Peerless Systems Corp. (hereinafter"Peerless" or the "Company"), as follows:



1

## NATURE OF THE ACTION

1.      This is a class action on behalf of all persons or other entities that purchased or acquired the common stock of Peerless within the period of June 11, 1999 through May 25, 2000, inclusive, (the "Class Period"), to recover damages caused by Defendants' violations of the federal securities laws.  During the Class Period, Defendants issued to the investing public false and misleading press releases concerning the Company's publicly-reported operations business model and financial results.

2.      Throughout 1999, Defendants issued press releases announcing outstanding business progress and financial results.  The Company announced increases in earnings per share, margins and revenues during this period as well as the Class Period.  However, the "outstanding" news was short lived.  After the close of trading on May 25, 2000, Peerless announced results for the first quarter of fiscal 2001 in which disastrous results first surfaced and revealed a change of business strategy that, according to Peerless management, was suddenly causing a "revenue trough."  The "revenue trough" in fact was the result of Peerless changing its business model to accelerate revenue recognition non-recurring engineering fees with royalty income that allowed tow acquisition to proceed and insiders to dispose of inflated stock.

3.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a) and the rules and regulations promulgated thereunder by the SEC, including Rule 10b-5, 17 C.F.R. § 240.10b-5.

4.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

5.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Many of the acts and transactions constituting the violations of law alleged herein, including the dissemination to the investing public of false and misleading information, occurred in substantial part in this Judicial District.  In addition, Peerless maintains business operation within this District.

1    6.       In connection with the acts, transactions, and conduct alleged herein,

2    Defendants, directly and indirectly, used the means and instrumentalities of interstate

3    commerce, including the United States mails, interstate telephone communications, and the

4    facilities of the national securities exchanges.

5                                    **THE PARTIES**

6    7.       Plaintiff Gary S. Gevisser purchased shares of Peerless common stock as set

7    forth on the certification annexed hereto.

8    8.       Defendant Peerless is incorporated in the State of Delaware and maintains its

9    principal place of business in Southern California at 2381 Rosecrans Avenue, El Segundo,

10   California 90245.  During the Class Period, Peerless common stock was actively traded on the

11   NASDAQ exchange.  According to the Company's press releases, Peerless purports to be a

12   leading provider to software based imbedded imaging systems to original equipment

13   manufacturer's ("OEM") of digital document products.

14   9.       Defendant Edward A. Gavaldon was a key member of Peerless management

15   and executive insider holding the titles of chairman, CEO and President.

16   10.      Defendant Thomas B. Ruffolo was a key member of Peerless management and

17   executive insider holding the title of the Vice President.

18   11.      By reason of their positions with the Company and their attendance at

19   management and/or board of directors meetings, Defendants Gavaldon and Ruffolo (sometimes

20   the "Individual Defendants") had access to internal Company documents, reports and other

21   information, including the adverse non-public information concerning the Company's business,

22   financial condition, and future prospects and thereby were charged with ensuring the

23   truthfulness and accuracy of the Company's public reports and releases.

24   12.      The Individual Defendants, because of their positions with the Company,

25   controlled and/or possessed the power and authority to control the contents of quarterly reports,

26   press releases, and presentations to securities analysts and, thus, the investing public.  Because

27   they prepared the Company's press releases or were provided with copies, they had the ability

28   and opportunity to correct or prevent the issuance of misleading press releases. Nevertheless,

1   the Individual Defendants, who had access to material non-public information, knew or
2   recklessly disregarded that adverse information had not been disclosed to, and was being
3   concealed from , the public and that the positive representations which were being made were
4   materially false and misleading.

5          13.     Each Defendant is liable as a primary violator, for making materially false and
6   misleading statements, and for participating in a fraudulent scheme that operated as a fraud or
7   deceit on purchasers of Peerless stock during the Class Period.  Peerless and the Individual
8   Defendants pursued a fraudulent scheme in furtherance of their common goal (*i.e.*, inflating the
9   price of Peerless stock by making materially false and misleading statements and concealing
10  material adverse information).  The fraudulent scheme was designed to and did: (i) deceive the
11  investing public, including Plaintiff and persons who purchased the common stock of Peerless
12  during the Class Period (the "Class"); (ii) artificially inflate the price of Peerless stock during
13  the Class Period; and (iii) caused Plaintiff and members of the Class to purchase Peerless stock
14  at inflated prices.

15         14.     Defendants' motive to engage in this conduct included their individual desire
16  to intentionally artificially inflate the price of Peerless common stock.

17         15.     The Individual Defendants, as officers and/or directors of the Company, are
18  controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act.
19  Be reason of their positions with the Company, they were able to and did, directly or indirectly,
20  in whole or in material part, control the content of the public statements issued by or on behalf
21  of the Company.  They participated in, and approved the issuance of, such statements made
22  throughout the Class Period, including the materially false and misleading statements and
23  material omissions identified herein.

24         16.     Peerless and the Individual Defendants, as officers and directors of a publicly
25  held company, had a duty promptly to disseminate truthful and accurate information with
26  respect to Peerless and promptly to correct any material public statements issued by or on
27  behalf of the Company that had become false or misleading.

28

17.     Each Defendant knew or recklessly disregarded that the misleading statements and omissions complained of herein would adversely affect the integrity of the market for the Company's stock and would cause the price of the Company's common stock to become artificially inflated.  Each Defendant acted knowingly or in such a reckless manner as to constitute a fraud and deceit upon Plaintiff and the Class.

18.     Peerless and the Individual Defendants are jointly and severally liable as direct participants in, and co-conspirators of, the wrongs complained of herein.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased Peerless common stock during the Class Period, and who suffered damages thereby.  Excluded from the Class are the Defendants, members of the Individual Defendants' families, any entity in which a Defendant has a controlling interest or of which a Defendant is a parent or subsidiary, any entity that is controlled by the Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns of the Defendants.

20.     The members of the Class are so numerous that joinder is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, the Plaintiff believes there are, at a minimum, thousands of members of the Class who traded during the Class Period.

21.     Common questions of law and fact exist as to all members of the Class and predominate over questions which only affect individual members of the Class.  Among the questions of law and fact common to the Class are:

a.  Whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.  Whether the Company issued false and misleading financial statements during the Class Period;

c.  Whether the Individual Defendants caused Peerless to issue false and misleading financial statements during the Class Period;

d.  Whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

COMPLAINT                                                                                                    PAGE 5

1

    e. Whether the market prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

2

3

    f. Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

4

5       22.    Plaintiff's claims, which arise out of Defendants' wrongful conduct in

6 violation of federal law as complained of herein, are typical of the class of the members of the

7 Class.

8       23.    Plaintiff will fairly and adequately protect the interests of the members of the

9 Class and has retained counsel competent and experienced in class actions and securities

10 litigation. Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

11       24.    A class action is superior to other available methods for the fair and efficient

12 adjudication of the controversy since joinder of all members of the Class is impracticable.

13 Furthermore, because the damages suffered by the individual Class members may be relatively

14 small, the expense and burden of individual litigation would prevent Class members from

15 individually redressing the wrongs done to them. Management of this action as a class action

16 will not present difficulty.

17       25.    Plaintiff will rely, in part, upon the presumption of reliance established by the

18 fraud-on-the-market doctrine in that:

19

    i.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period.

20

    ii.    The omissions and misrepresentations were material;

21

22

    iii.    The securities of the Company traded in an efficient market;

23

    iv.    The misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

24

25

    v.    Plaintiff and members of the Class purchased their Peerless stock between the time Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

26

27       26.    Based upon the following, Plaintiff and members of the Class are entitled to

28 the presumption of reliance upon the integrity of the market.

1

## NO STATUTORY SAFE HARBOR

2    27.    The statutory safe harbor provided for forward-looking statements under

3   certain circumstances does not apply to any of the false statements pleaded in this complaint,

4   because none of those statements were identified as "forward-looking" when made.  Nor did

5   Defendants supply meaningful cautionary language identifying important factors that could

6   cause actual results to differ materially from the results put forth in their statements.

7   Furthermore, even if Defendants' false statements pleaded herein are deemed to be forward-

8   looking, those statements are not protected by the statutory safe harbor, because at the time

9   each statement was made either Defendants had knowledge that the forward-looking statement

10  was false or the statement was authorized or approved by an executive officer of the Company

11  with actual knowledge that the statement was false.

12    28.    This lawsuit reveals a systematic and intentional failure on the part of

13  Defendants to disclose material adverse information concerning the status of the Company, its

14  operations and the resulting inevitable deterioration of its financial results.

15    29.    At a point in time commencing at least as early as the beginning of the Class

16  Period, Defendants made a conscious and intentional decision to inflate the share price of

17  Peerless in order to maximize the use of Peerless stock as "currency" to make certain

18  acquisitions needed to maintain Peerless as a viable operation.

19    30.    At a point in time commencing at least as early as the beginning of the Class

20  Period, Defendants made a conscious and intentional decision to inflate the share price of the

21  stock for the additional purpose, a core and critical one, of disposing of stock owned by the

22  Individual Defendants at prices greater than would otherwise be available.  This transaction by

23  the Individual Defendants were unusual in amount and kind and reflect the type of intentional

24  and conscious behavior prohibited by the securities laws.

25    31.    The Defendants were successful in their intentional misconduct intended to

26  artificially inflate the share price of Peerless.  Based on the material misstatements of material

27  fact and, equally pernicious, omission of material fact, by June 11, 1999 Peerless stock was

28  trading in the range of $9.00 a share.  This was the result of material misinformation and

1  concealment of material fact effected by the Defendants in documents for which Defendants

2  were responsible including the Company's 10-k, 10-Q and related press releases and analyst

3  briefing regarding the business operations of Peerless.    The affect of the material

4  misinformation intentionally disseminated to the public in the aforedescribed public documents

5  is engendered during the Class Period at its beginning by Chase Hambricht and Quist analyst

6  Matt Belkin's analysis set forth in his June 11th Daily Notes Report to public investors

7  regarding Peerless which stated the following:

8           A BUY rating was reiterated based on benefits from
         Minolta's acquisition of ams.    The company reported
9        1Q2000 EPS of $0.09.    The company is expected to
         generate earnings growth of 40% over the next three years.
10

11       32.    Material misinformation continued to be intentionally disseminated into the

12  market place during the Class Period proceeding as consistently exemplified by the above.

13  Defendants inflated the stock price of Peerless securities though improper and inaccurate public

14  documents, press releases and analyst briefings regarding the business and were intended by

15  the Defendants to inflate the stock price. The continuing impact of the material misinformation

16  during the Class Period as it unfolded is, again, engendered by the August 2, 1999 Daily Notes

17  Report of Hambreckt and Quist analyst Matt Belkin who stated:

18           A BUY rating [was] maintained with a 12 month price
         target of $20 per share, based on the company's strong
19       relationship with Minolta.    The company is expected to
         generate earnings growth of 35% over the next three years.

20       33.    On August 19, 1999 second quarter results for Peerless' fiscal year 2000 (Q2

21  ending July 31, 1999) were publicly announced.  These results were characterized as positive

22  by the Defendants and perceived as positive by the public investment community.  As such,

23  Defendants sustained the inflated Peerless stock price to approximately $15.00.  The publicly

24  reported results and investor perception were again engendered in Matt Belkins August 25,

25  1999 Daily Notes Report on Peerless provided the investment community which, consistent

26  with his prior information based on the public misinformation provided by Defendants, stated:

27

28

1
2
3
4

> The company reported solid 2Q00 EPS of $0.12. The company's 2Q00 EPS estimate [has been] raised from $0.70 to $0.75 to reflect a stronger overall outlook. A BUY rating [is] reiterated with a 12-month target price set at $20 per share. This 2nd quarter's 10Q reports a 14% increase in revenue with a 20% increase in gross profit.

5
6
7
8

34.     The second quarter results were reiterated in Peerless Systems 10-Q as above indicated. This 10-Q also included reference to Peerless accounting practices adopted and applied by Peerless management and which was not otherwise qualified. The passage in question stated:

9
10
11
12

> In certain cases, the Company enters into agreements with customers that require guaranteed minimum royalty payments. These payments typically extend over a period of four to eight quarters. The Company generally recognizes revenue on delivery, when collection of the resulting receivable is probable and when the fee is fixed and determinable.

13
14
15
16
17
18

> Over the past several quarters, the Company has experienced a shift in its business and financial model. The Company generates revenue from its OEMs through the sale of embedded imaging solutions in either turnkey or software development kit form. Historically, OEM demand for turnkey solutions has exceeded demand for SDK [software development kit] solutions. Additionally, the Company has expanded its solution offering by incorporating related embedded imaging and networking technologies licensed from third parties, which in future quarters could result in incremental SDK, services and royalty revenue streams.

19
20
21
22
23

> As noted above, the Company has recently experienced a shift away from the turnkey solutions to the sale of SDKs, particularly for its monochrome solutions, which incorporate more mature technology. The shift to SDK sales has resulted in an increase in the products shipping, as OEMs who utilize Peerless SDKs develop and introduce multiple products. Turnkey solutions are expected to continue in color and MFP where the technology is certain to evolve and where the turnkey development challenge is more difficult for OEMs to assume.

24
25
26
27
28

35.     The above was intended to and in fact was viewed in the investment community as a normally positive business development representing expanding business prospects. This fact was again reflected in analyst Matt Belkin's October 19, 1999 and November 2, 1999 Daily Notes Report(s) which, in each instance, reiterated a Buy recommendation on Peerless with a three-year EPS growth rate of 35% anticipated for Peerless.

36.     After experiencing a price decline during its fiscal third quarter in a manner consistent with stock price fluctuation for the industry during this period, and unrelated to any company-specific information publicly provided, on November 18, 1999 Peerless stock was trading at $13.00 following Defendants announcement of third quarter results. The exceptional results reported by Defendants were viewed positively by the investment community and, reflecting this fact, analyst Matt Belkin affirmed a BUY rating for the stock in the Daily Notes Report he issued, referencing solid third quarter earnings of $.15 resulting from wider operating margins.

37.     In conjunction with Defendants intent to secrete the true condition of Peerless, no mention was made in conjunction with the above financials reported for Peerless of any change in the way, method, manner, or procedures regarding the conduct of Peerless business, this was consistent with Defendants conduct throughout the Class Period and, on December 7, 1999 Peerless announced one its (two) acquisition (completed on December 22, 1999) using 890,000 shares of Peerless (*i.e.*, $8.40 a share).

38.     Following the aforedescribed acquisition, the stock of Peerless commenced a decline not attributable to any publicly disseminated information by the Defendants or other public sources, public analysis, or based on any available public information or data concerning Peerless. The reason for the decline was attributable to Defendants incremental disposal of stock. The reason became apparent on March 2, 2000 when fiscal year 2000 results were announced. The announcement by Defendants shocked the public investment community, disclosing a Q4 decline in revenues of 23% and a 37% drop in gross profits. The 10-K filed at this time describes the Company 22% increase in year over year licensing revenues attributed to the following:

> ...an increase in the number of products shipped into the marketplace incorporating Peerless' imaging and networking technology, an increase in the market penetration of existing products, and an increase in sales of SDKs. Additionally, during the fiscal 2000, the Company successfully negotiated a contract modification and extension with a major OEM resulting in the combination of a new sale and recognition of revenue previously deferred of a total of $1.0 million in product OEMs and an increase in guaranteed minimum royalty commitments.

The 10K continued and stated as follows:

> In December 1999, the Securities and Exchange Commission issued Staff Accounting Bulletin No. 101 (SAB 101), "Revenue Recognition in Financial Statements." SAB 101 provides guidance for revenue recognition under certain circumstances. The Company is currently evaluating the impact of SAB 101 on its financial statements and related disclosures but does not expect such impact, if any, will be material. The accounting and disclosures prescribed by SAB 101 will be effective no later than the second fiscal quarter of the first fiscal year beginning after December 15, 1999, as amended by.
>
> Revenue Recognition: The Company recognizes revenues in accordance with Statement of Position 97-2 "Software Revenue Recognition" as amended by Statement of Position 98-4.

39.    While not immediately or easily comprehended by the public investment community with regard to the scope and impact revealed by this announcement concerning Peerless (apart from comprehending a financially disastrous fourth quarter), the disclosure in fact provided the first, *al beit* fragmentary, revelation that earlier material disclosures by the Defendants were misleading either directly or by the omission of material facts.   This misinformation included the following:

1.    Peerless had materially changed its business model in a manner which substantially increased the risk associated with it being successful;

2.    Peerless materially altered its business model and product mix because it was unable to respond effectively or capably to competition in its earlier represented core competencies;

3.    Peerless materially and dramatically changed its revenue recognition policy and rendered invalid its prior licensing revenue recognition process earlier described herein as "payments typically extend over a period of four to eight quarter." In fact, reliance by Peerless on "block licenses" made Defendants earlier representations false and misleading. One result was that SAB 101, far from not having a material impact "if any" (as previously stated) would substantially impact reported earnings and cause a precipitous decline in margins

41.    On April 13, 2000, Defendant Gavaldon ceased to be employed by Peerless.

42.    On May 25, 2000 the Company publicly announced the extent of change undertaken to business operations in clear and comprehensible language as follows:

1
2
3

> Peerless previously reported its strategy of shifting sales to higher-margin SDKs, which has resulted in a revenue trough between the time a project begins and the point at which the customer ships product.

4   The full impact of the change in business became ever more apparent based on the

5   above as Peerless stock tumbled to unprecedented lows as licensing revenue dropped 70% and

6   gross profit 85% when compared to the prior fiscal period. Peerless stock now trades at

7   approximately $1.50, losing over a billion dollars in market cap.

### COUNT ONE

8
### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND
9   ### RULE 10b-5 OF THE SECURITIES AND EXCHANGE COMMISSION

10       43.    Plaintiff repeats and realleges each and every allegation contained in the

11   foregoing paragraphs as if fully set forth herein.

12       44.    This Court is asserted against all Defendants and is based upon Section 10(b)

13   of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

14       45.    During the Class Period, Defendants, singly and in concert, engaged directly

15   in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly

16   or recklessly engaged in acts, transactions, practices, and courses of business which operated

17   as a fraud and deceit upon Plaintiff and the other members of the Class. They made various

18   deceptive and untrue statements of material facts and omitted to state material facts necessary

19   to make the statements made, in light of the circumstances under which they were made, not

20   misleading to Plaintiff and the other members of the Class. The purpose and effect of said

21   scheme, plan, and unlawful course of conduct was, among other things, to induce Plaintiff and

22   the other members of the Class to purchase Peerless common stock during the Class Period at

23   artificially inflated prices.

24       46.    During the Class Period, Defendants, pursuant to said scheme, plan, and

25   unlawful course of conduct, knowingly and recklessly issued, caused to be issued, and

26   participated in the preparation and issuance of deceptive and materially false and misleading

27   statements to the investing public as particularized above.

28

COMPLAINT

47.     Through the Class Period, Peerless acted through the Individual Defendants, whom it put forth to the financial press and public as its valid representatives. The willfulness, motive, knowledge, and recklessness of the Defendants are therefore imputed to Peerless, which is primarily liable for securities law violations of the Individual Defendants committed while acting in their official capacities as Company representatives, or, in the alternative, which is liable for the acts of the Individual Defendants under the doctrine of respondent superior.

48.     As a result of the dissemination of the false and misleading statements set forth above, the market price of Peerless common stock was artificially inflated during the Class Period. Unaware of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by said Defendants, Plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Peerless common stock. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at artificially inflated prices.

49.     Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

50.     By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts of omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Peerless common stock during the Class Period.

## COUNT II

## VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT

51.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

COMPLAINT                                                                                    PAGE 13

52.     During the Class Period, the Individual Defendants, by virtue of their positions, stock ownership, and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the 1934 Act.

53.     The Individual Defendants had and exercised the power and influence to cause Peerless to engage in the illegal conduct and practices complained of herein.

54.     By reason of the conduct alleged in Count I of the Complaint, the Individual Defendants are liable for the aforesaid wrongful conduct, and are liable to Plaintiff and to the other members of the Class for th substantial damages which they suffered in connection with their purchases of Peerless common stock during the Class Period.

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

A.     Declaring this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other members of the Class against Defendants for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

C.     Awarding Plaintiff the fees and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts;

D.     Granting extraordinary equitable and/or injunctive relief as permitted by law, equity and federal and state statutory provisions sued on hereunder; and

E.     Granting such other and further relief as the Court may deem just and proper.

1

## PLAINTIFF DEMANDS A JURY DEMAND

2    Plaintiff hereby demands a trial by jury.

3

4    Dated:  August 28, 2000                    FINKELSTEIN & KRINSK

5

6                                               By
7                                                       Jeffrey R. Krinsk

8                                               Arthur L. Shingler
                                                501 West Broadway, Suite 1250
9                                               San Diego, CA 92101
                                                Telephone:  619/238-1333

10                                              Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                              PAGE 15

FINKELSTEIN & KRINSK
501 West Broadway, Suite 1250
San Diego, CA 92101
(619) 238-1333

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws,

that:

1.     The undersigned has reviewed the complaint and approves its filing.

2.     The undersigned did not purchase the security that is the subject of this action

at the direction of counsel or in order to participate in this lawsuit.

3.     The undersigned is willing to serve as a representative party on behalf of the

class, including providing testimony at deposition and trial, if necessary.

4.     The undersigned's transaction(s) of Peerless Systems Corp. during the Class

Period is/are as follows:

| # of Shares | Transaction Date(s) | Purchase/Sale Price |
|---|---|---|
| 500 | 12/10/99 /1/12/2000 | $10 / $17.67 |
| 500 | 12/10/99 | $9.98 |

5.     During the three years prior to the date of this Certificate, the undersigned has

sought to serve or served as a representative party for a class in the following actions filed

under the federal securities laws:   None.

6.     The undersigned has sought to serve or served as a representative party for a

class in the following actions under the federal securities laws filed subsequent to December

22, 1995:  None.

      7.      The undersigned will not accept any payment for serving as a representative party on behalf of the class beyond the undersigned's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

      I declare under penalty of perjury that the foregoing is true and correct.  Executed this _28_ day of _AUGUST_ 2000.

_____

Signature

_____

GARY S. GEVISSER

Print Name

## CIVIL COVER SHEET

| I(a) PLAINTIFFS | DEFENDANTS PEERLESS SYSTEMS CORP., EDWARD A. GAVALSON, AND THOMAS B. RUFFOLO |
|---|---|

GARY S. GEVISSER, Individually and on Behalf of Himself and All Others Similarly Situated

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT El Segundo
(IN U.S. PLAINTIFF CASES ONLY)

(c) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
JEFFREY R. KRINSK   (619) 238-1333
FINKELSTEIN & KRINSK
501 West Broadway, Ste. 1250
San Diego, CA 92101

ATTORNEYS (IF KNOWN)

'00 CV 1725 L (RBB)

### II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- □ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- □ 2 U.S. Government Defendant
- □ 4 Diversity (Indicate Citizenship of Parties In Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business In This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business In Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

### IV. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- □ 2 Removed from State Court
- □ 3 Remanded from Appellate Court
- □ 4 Reinstated or Reopened
- □ 5 Transferred from another district (specify)
- □ 6 Multidistrict Litigation
- □ 7 Appeal to District Judge from Magistrate Judgment

### V. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $
Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES  □ NO

### VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, U.S.C. Section 78j(b) and 78t(a), Rule 10b-5, 17 C.F.R. Section 240.10b-5, Private Securities Litigation Reform Act of 1995

15:0078

### VII. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| OTHER STATUTES | CONTRACT | TORTS | | FORFEITURE / PENALTY | BANKRUPTCY |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | □ 610 Agriculture | □ 422 Appeal 28 USC 158 |
| □ 410 Antitrust | □ 120 Marine | □ 310 Airplane | □ 362 Personal Injury-Med Malpractice | □ 620 Other Food & Drug | □ 423 Withdrawal 28 USC 157 |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 315 Airplane Product Liability | □ 365 Personal Injury-Product Liability | □ 625 Drug Related Seizure of Property 21 USC 881 | |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 320 Assault, Libel & Slander | □ 368 Asbestos Personal Injury Product Liability | □ 630 Liquor Laws | PROPERTY RIGHTS |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 330 Federal Employers' Liability | | □ 640 R.R. & Truck | □ 820 Copyrights |
| □ 470 Racketeer Influenced and Corrupt Organizations | □ 151 Medicare Act | □ 340 Marine | PERSONAL PROPERTY | □ 650 Airline Regs | □ 830 Patent |
| □ 810 Selective Service | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 345 Marine Product Liability | □ 370 Other Fraud | □ 660 Occupational Safety/Health | □ 840 Trademark |
| ☒ 850 Securities/Commodities/ Exchange | | □ 350 Motor Vehicle | □ 371 Truth in Lending | □ 690 Other | SOCIAL SECURITY |
| □ 875 Customer Challenge 12 USC 3410 | □ 153 Recovery of Overpayment Of Veteran's Benefits | □ 355 Motor Vehicle Product Liability | □ 380 Other Personal Property Damage | | □ 861 HIA (1395ff) |
| □ 891 Agricultural Act | □ 160 Stockholders' Suits | □ 360 Other Personal Injury | □ 385 Property Damage Product Liability | LABOR | □ 862 Black Lung (923) |
| □ 892 Economic Stabilization Act | □ 190 Other Contract | | | □ 710 Fair Labor Standards Act | □ 863 DIWC/DIWW (405(g)) |
| □ 893 Environmental Matters | □ 195 Contract Product Liability | | | □ 720 Labor/Mgmt. Relations | □ 864 SSID Title XVI |
| □ 894 Energy Allocation Act | REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | □ 730 Labor/Mgmt. Reporting & Disclosure Act | □ 865 RSI (405(g)) |
| □ 895 Freedom of Information Act | □ 210 Land Condemnation | □ 441 Voting | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 740 Railway Labor Act | FEDERAL TAX SUITS |
| □ 900 Appeal of Fee Determination Under Equal Access to Justice | □ 220 Foreclosure | □ 442 Employment | □ 530 General | □ 790 Other Labor Litigation | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| | □ 230 Rent Lease & Ejectment | □ 443 Housing/ Accommodations | □ 535 Death Penalty | | □ 871 IRS-Third Party 26 USC 7609 |
| □ 950 Constitutionality of State Statutes | □ 240 Torts to Land | □ 444 Welfare | □ 540 Mandamus & Other | □ 791 Empl. Ret. Inc. Security Act | |
| □ 890 Other Statutory Actions | □ 245 Tort Product Liability | □ 440 Other Civil Rights | □ 550 Civil Rights | | |
| | □ 290 All Other Real Property | | □ 555 Prison Condition | | |

### VIII(a). IDENTICAL CASES: Has this action been previously filed and dismissed, remanded or closed?  No _x_  Yes

If yes, list case number(s):

CV-71 (8/99)   CIVIL COVER SHEET - Continued on Reverse   Page 1 of 2

FOR OFFICE USE ONLY:  □ Pro Hac Vice fee:  □ paid  □ not paid
Applying IFP _____  Judge _____  Mag. Judge _____

**CIVIL COVER SHEET**
(Reverse Side)

AFTER COMPLETING THE FRONT SIDE OF FORM JS-44C, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b).  RELATED CASES:** Have any cases been previously filed that are related to the present case? __X__ No _____ Yes

If yes, list case number(s): _____

CIVIL CASES ARE DEEMED RELATED IF A PREVIOUSLY FILED CASE AND THE PRESENT CASE:

(CHECK ALL BOXES    □ A.  Appear to arise from the same or substantially identical transactions, happenings, or events;

THAT APPLY)        □ B.  Involve the same or substantially the same parties or property;

                     □ C.  Involve the same patent, trademark or copyright;

                     □ D.  Call for determination of the same or substantially identical questions of law, or

                     □ E.  Likely for other reasons  may entail unnecessary duplication of labor if heard by different judges.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)

□ CHECK HERE IF THE US GOVERNMENT, ITS AGENCIES OR EMPLOYEES IS A NAMED PLAINTIFF.

San Diego County

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).

□ CHECK HERE IF THE US GOVERNMENT, ITS AGENCIES OR EMPLOYEES IS A NAMED DEFENDANT.

Los Angeles County

List the California County, or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)

**NOTE:** In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** X _____ Date 8/24/00

**NOTICE TO COUNSEL/PARTIES:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3.3 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| NATURE OF SUIT CODE | ABBREVIATION | SUBSTANTIVE STATEMENT OF CAUSE OF ACTION |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969.  (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |